**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PHYLLIS JAGER,<br><br>                Plaintiff,<br><br>    v.<br><br>DOORDASH INC.,<br><br>                Defendant. | Case No. 7:25-cv-01929 |

**DEFENDANT DOORDASH, INC.'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CASE**

GIBSON, DUNN & CRUTCHER LLP

Michael Holecek (*pro hac vice*)
mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213.229.7000

Natalie J. Hausknecht (*pro hac vice*)
nhausknecht@gibsondunn.com
1900 Lawrence Street, Suite 3000
Denver, CO 80202
Phone: 303.298.5700

Sean Howell (*pro hac vice*)
showell@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Phone: 415.393.8200

*Attorneys for Defendant DoorDash, Inc.*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ............................................................ 2

      A.    DoorDash's Marketplace Connects Customers, Restaurants, and Dashers ........... 2

      B.    Jager Agreed to Arbitrate Her Dispute Under the T&C ....................................... 3

      C.    Jager Submitted a Request for an Informal Dispute Resolution with
            DoorDash ............................................................................................................. 5

      D.    Before Any Informal Dispute Resolution Conference, Jager's DoorDash
            Account Was Flagged for Potentially Fraudulent Activity .................................. 5

      E.    Jager Filed a Lawsuit Before Participating in the Informal Dispute
            Resolution Conference ........................................................................................ 6

      F.    Jager's Allegations ............................................................................................... 8

III.  ARGUMENT ...................................................................................................... 9

      A.    The FAA Governs the Parties' Arbitration Agreement ........................................ 9

      B.    Jager Agreed to Arbitrate Her Dispute with DoorDash ..................................... 11

      C.    The Arbitrator Must Resolve Any Challenges to the Scope and Validity of
            the Arbitration Agreement ................................................................................. 13

            1.    The Arbitrator Must Decide Any Challenges to the Agreement's
                  Validity or Enforceability ......................................................................... 13

            2.    The Gateway Issues Under the FAA Are Satisfied .................................. 15

                  a.    The Arbitration Agreement Is a Valid Contract ........................... 16

                  b.    The Arbitration Agreement Covers Jager's Claims ...................... 17

                  c.    Jager's Allegations That DoorDash Breached the T&C Are
                        Meritless but Must Be Resolved by the Arbitrator ...................... 19

                  d.    Jager's Allegations that the Agreement Is Unconscionable
                        Are Also Meritless but Must Be Resolved by the Arbitrator ....... 24

      D.    Alternatively, Jager's Claims Must Be Dismissed Under Rule 12(b)(1) for
            Lack of Subject Matter Jurisdiction .................................................................. 25

      E.    Jager's Claims Should Be Stayed While Arbitration Proceeds ........................... 26

**TABLE OF CONTENTS**
(continued)

                                                                                    Page

IV.    CONCLUSION                                                                     27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*All Metro Health Care Servs., Inc. v. Edwards,*
  57 A.D.3d 892 (N.Y.S.C. App. Div. 2008)..............................................................21

*Allied-Bruce Terminix Cos. v. Dobson,*
  513 U.S. 265 (1995).................................................................................................10

*Arkin v. DoorDash, Inc.,*
  2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020)......................................1, 2, 15, 17, 24

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011).................................................................................................25

*Badinelli v. Tuxedo Club,*
  183 F. Supp. 3d 450 (S.D.N.Y. 2016).................................................................12, 18

*BG Grp., PLC v. Rep. of Argentina,*
  572 U.S. 25 (2014)...................................................................................................20

*Bimota SPA v. Rousseau,*
  628 F. Supp. 2d 500 (S.D.N.Y. 2009).....................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006)...........................................................................................10, 23

*Camilo v. Lyft, Inc.,*
  384 F. Supp. 3d 435 (S.D.N.Y. 2019).....................................................................10

*Cartagena Enters., Inc. v. J. Walter Thompson Co.,*
  2013 WL 5664992 (S.D.N.Y. Oct. 16, 2013)..........................................................26

*Citizens Bank v. Alafabco, Inc.,*
  539 U.S. 52 (2003)...................................................................................................10

*Contec Corp. v. Remote Sol., Co.,*
  398 F.3d 205 (2d Cir. 2005)...............................................................................12, 15

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),*
  923 F.2d 245 (2d Cir. 1991).....................................................................................18

*DIRECTV, Inc. v. Imburgia,*
  577 U.S. 47 (2015)...................................................................................................10

*Edmundson v. Klarna, Inc.,*
  85 F.4th 695 (2d Cir. 2023) .....................................................................................10

*EEOC v. Waffle House, Inc.,*
  534 U.S. 279 (2002).................................................................................................17

iii

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*In re Ellison Assocs.*,
    63 B.R. 756 (S.D.N.Y. 1983)...........................................................................................22–23

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)...................................................................................................................1

*EX.CO Techs. Ltd. v. Empire Media Grp. Inc.*,
    2023 WL 5035175 (S.D.N.Y. Aug. 8, 2023)...............................................................20

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995).................................................................................................................16

*Foran v. NFL*,
    2019 WL 2408030 (S.D.N.Y. June 7, 2019) ...................................................14, 19

*In re Glekel*,
    30 N.Y.2d 93 (1972) ........................................................................................................19–20

*Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*,
    2023 WL 2138693 (S.D.N.Y. Feb. 21, 2023)...........................................................20

*Harris v. TD Ameritrade Inc.*,
    338 F. Supp. 3d 170 (S.D.N.Y. 2018)..........................................................................25

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
    372 F.2d 753 (2d Cir. 1967)...............................................................................................17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019).................................................................................................................14

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002).................................................................................................................20

*Jager v. DoorDash, Inc.*,
    No. 7:24-CV-09195 (S.D.N.Y. Dec. 2, 2024) ...........................................................7

*Kai Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..........................................................................24

*Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of New York*,
    28 N.Y.2d 101 (1971).........................................................................................................22

*Levy v. Credit Plus, Inc.*,
    2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023) .........................................................13

*Marciano v. DCH Auto Grp.*,
    14 F. Supp. 3d 322 (S.D.N.Y. 2014)............................................................................17

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)................................................................................................................10

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Micheli & Shel, LLC v. Grubhub Inc., et al.*,
    588 F. Supp. 3d 483 (S.D.N.Y. 2022) ................................................................. 2, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................................ 24, 25

*Morelli v. Alters*,
    2020 WL 1285513 (S.D.N.Y. 2020) ................................................................................. 20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................................................ 11

*In re Nat'l Equip. Rental*,
    28 N.Y.2d 639 (1971) ................................................................................................ 19–20

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
    442 F.3d 101 (2d Cir. 2006) ......................................................................................... 23

*Ostberg v. Dragan Litric*,
    915 N.Y.S.2d 256 (N.Y.S.C. App. Div. 2011) ................................................................ 21

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ......................................................................................... 14

*Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*,
    2000 WL 1457079 (S.D.N.Y. Sept. 28, 2000) ....................................................... 16, 17

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................................................... 1–2, 11

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018) ......................................................................... 10

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .................................................................................. 13, 19, 23

*Rosehoff Ltd. v. Cataclean Americas LLC*,
    2013 WL 2389725 (W.D.N.Y. May 30, 2013) ......................................................... 25–26

*Scherck v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ................................................................................................ 26

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) ................................................................................................ 26

*Stern v. Gepo Realty Corp.*,
    289 N.Y. 274 (1942) ................................................................................................ 22

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010) ......................................................................................... 18

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Tepper Realty Co. v. Mosaic Tile Co.*,
    259 F. Supp. 688 (S.D.N.Y. 1966)............................................................................12

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960).................................................................................................16, 18

*Valle v. ATM Nat., LLC*,
    2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ...........................................................24

*VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*,
    717 F.3d 322 (2d Cir. 2013).......................................................................................11

*Wu v. Uber Techs., Inc.*,
    78 Misc. 3d 551 (N.Y. Sup. Ct. 2022), *aff'd*, 219 A.D.3d 1208 (2023), *aff'd*,
    43 N.Y.3d 288 (2024) ................................................................................................21

*Zafar v. Fast Track Leasing, LLC*,
    79 N.Y.S.3d 280 (App. Div. 2018) ...........................................................................27

*Zambrano v. Strategic Delivery Sols., LLC*,
    2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016)....................................................13, 27

**Statutes**

9 U.S.C. § 2............................................................................................................10, 11

9 U.S.C. § 3.......................................................................................................2, 10, 26

9 U.S.C. § 4..........................................................................................................1, 9, 10

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................25

N.Y. C.P.L.R. § 7503....................................................................................................27

N.Y. C.P.L.R. § 7503(a) ................................................................................................2

## I.   INTRODUCTION

Phyllis Jager's prolix complaint against DoorDash features over-the-top rhetoric and accuses DoorDash of practices that she concedes had no impact on her. She seeks over $1 billion primarily because DoorDash implemented security measures on her account, which she alleges caused DoorDash delivery drivers ("Dashers") to think less of her, and because DoorDash eventually deactivated her account. Jager also alleges that DoorDash insufficiently vets Dashers, but she alleges no injury from that conduct. DoorDash disputes all of Jager's claims. But this case cannot proceed in court because Jager agreed to arbitrate her claims.

When a defendant moves to compel arbitration, the key issue for the Court to resolve is usually whether the parties formed an agreement to arbitrate. Here, resolving that issue is easy, because Jager attaches the parties' contract and arbitration agreement to her complaint, and bases her claims on that same contract. In fact, she repeatedly alleges in her complaint that she "agree[d] to DoorDash's Terms and Conditions and Privacy Policy." Complaint ("Compl."), Dkt. 1 ¶ 252; *see also id.* ¶ 83 (alleging that the Terms and Conditions are an "agreement between Jager and DoorDash"). The Terms and Conditions ("T&C") state, at the top of the first page, that the parties must arbitrate all disputes unless the consumer opts out of arbitration—something Jager did not do.

The Court should accordingly enforce the parties' agreement and compel Jager to bring her claims in arbitration. The Federal Arbitration Act ("FAA") requires courts to "enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see also* 9 U.S.C. § 4. Every court that has evaluated DoorDash's T&C has compelled individual consumers to arbitrate their disputes with DoorDash. *See, e.g., Arkin v. DoorDash, Inc.*, 2020 WL 4937825, at *5 (E.D.N.Y. Aug. 24, 2020); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587

(N.D. Cal. 2020). This Court should do the same. The T&C are valid and enforceable under the FAA and New York law, they cover Jager's claims, and in any event the parties agreed to delegate all disputes over arbitrability to an arbitrator. *See Micheli & Shel, LLC v. Grubhub Inc., et al.*, 588 F. Supp. 3d 483, 490 (S.D.N.Y. 2022) (enforcing the delegation clause in DoorDash's merchant Terms of Service); *Arkin*, 2020 WL 4937825, at *5 (enforcing the delegation clause in DoorDash's T&C).

DoorDash respectfully requests that the Court compel Jager to arbitrate her claims, stay the action pending the resolution of this motion, and stay all further proceedings pending completion of arbitration. A stay of arbitration is required under both the FAA, *see* 9 U.S.C. § 3, and New York law, *see* N.Y. C.P.L.R. § 7503(a). In the alternative, DoorDash moves this Court to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.[1]

## II.    STATEMENT OF RELEVANT FACTS

### A.    DoorDash's Marketplace Connects Customers, Restaurants, and Dashers

DoorDash is a technology company headquartered in San Francisco that facilitates food ordering and delivery through its online Marketplace. Declaration of Brian Cramer ("Cramer Decl.") ¶ 3. The Marketplace connects consumers, a broad array of restaurants and other merchants, and independent-contractor delivery providers known as Dashers. *Id.* Consumers can access the Marketplace via the DoorDash website or the mobile application ("DoorDash app"). *Id.*

---

[1] DoorDash reserves its right to file a motion under Fed. R. Civ. P. 12(b)(6) in the event the Court denies its motion to compel arbitration. And to the extent the Court finds that factual disputes exist that prevent this motion from being decided on the pleadings and existing record, DoorDash reserves the right to seek discovery from Jager on issues of arbitrability.

2

**B.      Jager Agreed to Arbitrate Her Dispute Under the T&C**

Jager repeatedly agreed to the T&C, and to the arbitration clause contained in the T&C. She agreed to the T&C when she signed up for a DoorDash account on July 31, 2021, and when she subscribed to DashPass in 2022.  Cramer Decl. ¶¶ 6–9, 11.  Jager further manifested her assent to each new version of the T&C by continuing to use the DoorDash Marketplace—placing over 4,000 orders, including as recently as November 21, 2024.  *Id.* ¶¶12–13.

Jager signed up for a DoorDash consumer account on an Android mobile device using doordash.com on July 31, 2021, by filling in her name, email, mobile number, and password. Cramer Decl. ¶ 9.  The DoorDash sign-up screen in July 2021 prominently disclosed that by signing up, the consumer agreed to the then-operative T&C, which were prominently hyperlinked. *Id.* ¶ 7.  By signing up for DoorDash, Jager thus agreed to the T&C, *id.* ¶ 9, as she repeatedly admits in her Complaint.  Compl. ¶¶ 83, 139, 252, 267.

Jager again agreed to the then-operative T&C in 2022 by signing up for DashPass, DoorDash's subscription service that offers reduced fees on qualifying orders.  The 2022 DashPass sign-up screen prominently disclosed that, by signing up for DashPass, the consumer agreed to the T&C, which were prominently hyperlinked.  Cramer Decl. ¶ 11.

Jager attaches as an exhibit to her complaint the T&C that were in effect in November 2024, when she placed her latest DoorDash orders.  *See* Compl. ¶ 173; Dkt. 4-1.  She admits that she "agree[d] to" those November 2024 T&C.  *Id.* ¶ 252; *see also id.* ¶ 83 (alleging that the T&C are an "agreement between Jager and DoorDash"); *id.* ¶ 139 (same); *id.* ¶ 255 (same); *id.* ¶ 267 (same).  The November 2024 T&C govern Jager's claims because they are the most recent T&C to which she agreed.[2]  Cramer Decl. ¶ 12.

---

[2] The March 2021, July 2022, and November 2024 T&C contain similar arbitration provisions, including substantially the same conspicuous disclosure of the arbitration agreement on the first

The November 2024 T&C prominently notified Jager that, by agreeing to the T&C, she was agreeing to arbitrate her disputes with DoorDash.  The first page of the T&C stated that they included an "ARBITRATION AGREEMENT" that "WILL REQUIRE DISPUTES BETWEEN US TO BE SUBMITTED TO ARBITRATION."  Cramer Decl., Ex. C at 1.  Jager "agree[d] that any dispute or claim arising out of or relating in any way to . . . [her] access or use of [DoorDash's] Services," to "advertising or marketing communications regarding DoorDash or [its] Services," to "any products or services sold or distributed through [DoorDash's] Services," or to "any aspect of [her] relationship or transactions with DoorDash" would be "resolved by binding arbitration, rather than in court." *Id.* § 14(a).  The T&C define "Services" to include "access[ing] any of our websites located at https://www.doordash.com and https://trycaviar.com, install[ing] or us[ing] [DoorDash's] mobile application, install[ing] or us[ing] any other technology supplied by DoorDash," or accessing or using "any information, function, feature, or service available or enabled by DoorDash." *Id.* at 3.

The arbitration agreement in the November 2024 T&C also contains a delegation clause stating that "[t]he arbitrator, and not any federal, state, provincial, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement."  Cramer Decl., Ex. C § 14(d).  The arbitration agreement afforded Jager the right to opt out of arbitration with DoorDash within 30 days of signing up for a DoorDash account.  *Id.* § 14(h).  It notified Jager of her right to opt out in capitalized text on the first page of the agreement.  *Id.* at 1.  Jager did not opt out of arbitration.

---

page; the same scope and terms of the arbitration agreement; the same informal resolution procedure; and the same opt-out conditions and disclosures.  *Compare* Cramer Decl., Ex. A §§ 12(a), (b), (d), (h) (March 2021 T&C), *with id.*, Ex. B §§ 12(a), (b), (d), (h) (July 2022 T&C); *id.*, Ex. C at 1, §§ 14(a), (b), (d), (h) (November 2024 T&C).

Cramer Decl. ¶ 14.

**C.      Jager Submitted a Request for an Informal Dispute Resolution with DoorDash**

In consenting to the T&C, Jager agreed that she would arbitrate her claims, and that, "before either [Jager] or DoorDash demands or attempts to commence arbitration against the other," Jager and DoorDash would "personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this mutual Arbitration Agreement." *Id.*, Ex. C § 14(b). Specifically, the T&C provide that "[t]he party initiating [a] claim must give notice to the other party in writing of [his or her] intent to initiate an informal dispute resolution conference," and that the conference "shall occur within 60 days after the other party receives such notice, unless an extension is mutually agreed upon by the parties." *Id.*

Pursuant to this provision, Jager sent DoorDash a notice of her intent to initiate an informal dispute resolution conference on November 6, 2024, to address "claims she intend[ed] to bring against DoorDash." Declaration of Michael Holecek ("Holecek Decl.") ¶ 2 & Ex. G. In her notice, Jager stated that she had spent well over $1 million on orders through DoorDash, and that these orders had given her "a prime opportunity to observe the workings of DoorDash." *Id..*, Ex. G at 2. She alleged that third parties sometimes accompany Dashers when they make deliveries, and that Dashers sometimes take unnecessary photos to confirm that a delivery has been completed. *Id.* She asked DoorDash to "change its ways." *Id.* at 4.

**D.      Before Any Informal Dispute Resolution Conference, Jager's DoorDash Account Was Flagged for Potentially Fraudulent Activity**

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

Declaration of Alexander Bellini ("Bellini Decl.") ¶ 5. ████████████████

██████████████████████████████████, the customer-support team

escalated the matter to DoorDash's fraud team for further review. *Id.*





*Id.* This requirement was entirely independent of the fact that Jager had sent DoorDash a notice

regarding her intent to pursue the informal dispute resolution process. *Id.*

In reviewing Jager's account, DoorDash's fraud team observed certain markers that often

indicate fraudulent activity, including ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. Bellini Decl. ¶ 7. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮. *Id.* ¶ 3. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ *Id.*

Following its review, DoorDash's fraud team decided to deactivate Jager's account on

November 21. Bellini Decl. ¶ 8. This decision was executed without the fraud team's knowledge

of and entirely independent of the fact that Jager had sent DoorDash a notice regarding her intent

to pursue the informal dispute resolution process. *Id.* ¶ 9. DoorDash's fraud team does not have

access to notices of intent to pursue informal dispute resolution sent by consumers. *Id.*

**E.     Jager Filed a Lawsuit Before Participating in the Informal Dispute Resolution Conference**

On December 2, well before the 60-day deadline for the parties to hold their dispute-

resolution conference would expire on January 5, 2025, Jager filed a lawsuit against DoorDash in

this District. Declaration of Paul J. Kremer ("Kremer Decl.") ¶ 2. Jager alleged that DoorDash

deactivated her account "in retaliation for her sending the November 6 notice," ignoring her offer

6

to "work with DoorDash to improve its security practices." *Jager v. DoorDash, Inc.*, No. 7:24-CV-09195, Dkt. 1 ¶¶ 1, 75 (S.D.N.Y. Dec. 2, 2024). She also reiterated the allegations in her notice about DoorDash's purportedly lax security practices, contending that Dashers "routinely are accompanied by others during deliveries," that "DoorDash does not exercise sufficient control over its Dashers to ensure they are the ones delivering the orders," and that "there appear to be few to no controls" regarding the photographs Dashers take of deliveries. *Id.* ¶¶ 8, 14, 22. Jager brought claims for breach of contract, breach of the covenant of good faith and fair dealing, and defamation, and sought an injunction requiring DoorDash to restore her account. *Id.* ¶¶ 57–116. She alleged that, because DoorDash purportedly retaliated against her for invoking her informal dispute resolution rights on November 6, she was no longer legally bound by her agreement to "attend an informal dispute resolution conference" and to pursue her claims against DoorDash only through arbitration. *Id.* ¶ 112.

Though Jager short-circuited the informal dispute resolution process and then breached her agreement to arbitrate by filing a complaint in federal court, DoorDash continued to make numerous attempts to resolve the parties' dispute informally. On December 17, DoorDash's counsel emailed Jager's counsel to discuss Jager's claims, and on December 18—within the 60-day period for the informal dispute resolution conference—DoorDash's counsel and Jager's counsel discussed Jager's claims by telephone, in addition to discussing an extension of DoorDash's time to respond to the complaint. Kremer Decl. ¶¶ 3–4. DoorDash's counsel followed up with an email proposing that the parties "plan to be in touch after the holidays." *Id.* ¶ 4 & Ex. E. Jager's counsel did not express any disagreement with that plan, and did not request that the parties further attempt to resolve their dispute before the 60-day period from the time Jager sent her notice expired. *Id.*

7

On January 6, 2025—the 61st day after Jager had sent her notice—her counsel asked to confer "regarding the plan going forward in this lawsuit and/or the contemplated discussion that Ms. Jager initially sought to have." Kremer Decl. ¶ 5 & Ex. E. The parties held a phone call on January 10 to discuss how the parties might resolve both Jager's initial complaints about DoorDash's security practices and her lawsuit. *Id.* ¶ 5. On January 13, Jager's counsel stated over email that Jager was "willing to kick the can down the road on the litigation while the parties meet to discuss the issues" Jager raised. *Id.* ¶ 6 & Ex. E. The parties scheduled a virtual meeting for January 22. *Id.* ¶ 7. The day before the meeting, Jager's counsel insisted that "one or more business folks" from DoorDash attend the meeting, noting that "it will be very important for my client in taking this process forward cooperatively if someone from DoorDash other than in-house counsel is at the meeting." *Id.* ¶ 8 & Ex. F. DoorDash arranged for a member of its Strategy and Operations team, Alexander Bellini, to attend. *Id.* ¶ 8.

The parties met for over 90 minutes on January 22 to discuss Jager's lawsuit and her claims about DoorDash's security practices. Mr. Bellini and DoorDash's in-house counsel and outside counsel, who had the authority to resolve the dispute, appeared on behalf of DoorDash. Kremer Decl. ¶ 10. Jager was accompanied by her counsel and at least five other individuals. *Id.* The parties did not reach a resolution. *Id.* ¶ 11. After additional correspondence between the parties, on February 20, counsel for DoorDash conveyed a settlement proposal to Jager's counsel over the phone. *Id.* Jager never substantively responded to that proposal. Instead, Jager voluntarily dismissed her complaint on March 7, 2025, then filed this action on March 10. *Id.* ¶ 12.

### F.    Jager's Allegations

Jager's new complaint—the one that is now before this Court—added claims for fraud, false advertising, and deceptive conduct to the claims in her previous lawsuit. *See* Compl. ¶¶ 308–14, 330–50. She alleges that DoorDash misrepresented the way it allocates tips, and also

misrepresented the way in which express deliveries work, the background checks it conducts on Dashers, and its safety protocols. *Id.* She further alleges that DoorDash misrepresented its process for vetting Dashers, which, she contends, "likely placed [her] in serious danger of physical harm on countless occasions to an extent we won't know for certain any time soon," *id.* ¶ 124, though she does not allege this practice actually harmed her. She further contends that DoorDash's practice of instructing Dashers to take photographs confirming that a delivery was completed at the right address "can be used for . . . burglary and vehicle theft" as well as "the abduction of children," *id.* ¶ 140, though she again does not allege that she was harmed in any way by this practice. And she alleges that DoorDash defamed her by requiring her to enter a PIN for certain deliveries, requiring her to verify her debit card, and deactivating her account. *Id.* ¶¶ 275–307.

Jager alleges that DoorDash could have solved these issues by using "award-winning software" developed by Jager's own company, which she asserts is "the most valuable company in existence." *Id.* ¶¶ 12, 304, 305. She seeks over $1 billion in damages. *Id.* ¶¶ 306, 307.

### III.    ARGUMENT

Jager admits that she agreed to the T&C, which include an agreement to arbitrate all disputes with DoorDash under the FAA. To the extent Jager challenges the arbitration agreement's enforceability or applicability to this dispute, the parties agreed to delegate those issues for the arbitrator—not this Court—to decide. The Court should accordingly compel arbitration and stay this action.

### A.    The FAA Governs the Parties' Arbitration Agreement

The FAA requires courts, upon motion, to compel arbitration "in accordance with the terms" of a valid agreement to arbitrate. 9 U.S.C. § 4. If the court is satisfied that a plaintiff's claims are "referable to arbitration under an agreement in writing," it "shall on application of one

9

of the parties stay" the action, *id.* § 3, and order arbitration to "proceed in the manner provided for" in the agreement, *id.* § 4.

The FAA governs the arbitration agreement in DoorDash's T&C for two independent reasons.  ***First***, that agreement expressly states that it "is governed by the Federal Arbitration Act ('FAA') in all respects."  Cramer Decl., Ex. C § 14(c)(i).  Courts routinely give effect to parties' agreements to be bound by the FAA.  *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442–43, 449 (2006) (holding that "a challenge to the validity of [a] contract as a whole" was for arbitrator to decide where agreement stated it was governed by FAA); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–64 (1995) (resolving "ambiguities as to the scope of the arbitration clause . . . in favor of arbitration" where agreement stated it was governed by FAA); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58–59 (2015).

***Second***, the FAA applies to any agreement with an arbitration clause that concerns a transaction "involving commerce," 9 U.S.C. § 2, as DoorDash's agreement with Jager does.  The FAA's reach is "expansive[]," "coinciding with that of the Commerce Clause."  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995); *accord Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  Courts regularly apply the FAA where, as here, a contract concerns transactions made over the internet.  *See, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (FAA governed contract "pertain[ing] to internet transactions and rideshare services"); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705 (2d Cir. 2023) (FAA governed contract for online payment service); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018).

DoorDash connects consumers, a broad array of restaurants and other merchants, and Dashers.  Cramer Decl. ¶ 3.  Consumers may access the DoorDash Marketplace via the DoorDash website or the DoorDash app.  *Id*.  Dashers typically receive delivery opportunities via the

10

DoorDash app on their smartphones or other mobile devices. *Id*. And DoorDash conducts business in all 50 states, the District of Columbia, and internationally. *Id*. Accordingly, the FAA applies. *See, e.g.*, *Peter*, 445 F. Supp. 3d at 583 (FAA governs DoorDash's T&C).

**B.      Jager Agreed to Arbitrate Her Dispute with DoorDash**

The Court should compel Jager to arbitrate her dispute with DoorDash because Jager agreed to do so. The FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and courts are required to "move" parties "out of court and into arbitration as quickly and easily as possible," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Whereas the arbitrator decides "questions of arbitrability" delegated to it by the parties, courts decide "whether the parties agreed to arbitrate in the first place." *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 326 n.2 (2d Cir. 2013). Because the parties here agreed to delegate threshold issues of arbitrability to the arbitrator, Cramer Decl., Ex. C § 14(d), the only question for the Court to decide is whether the parties entered into a contract that included an arbitration agreement. That question is easily resolved because Jager specifically alleges that she "agree[d] to DoorDash's Terms and Conditions and Privacy Policy." Compl. ¶ 252; *see also id.* ¶ 83 (alleging that the T&C are an "agreement between Jager and DoorDash"); *id.* ¶ 139 (same); *id.* ¶ 255 (same); *id.* ¶ 267 (same). The arbitration agreement is part of the T&C, as the T&C note on the very first page, in all capital letters. Cramer Decl., Ex. C at 1. Jager's concession is not surprising, given that she repeatedly agreed to be bound by the T&C—first when she initially signed up for DoorDash, and again when she signed up for DashPass. Cramer Decl. ¶¶ 6–9, 11.

11

Further, Jager is estopped from arguing that she did not agree to the T&C, because her claims are premised on DoorDash's alleged breach of the T&C. Compl. ¶¶ 254–74 (alleging breach of T&C and breach of covenant of good faith and fair dealing); *id.* ¶¶ 315–29 (seeking declaratory judgment related to DoorDash's alleged breach of T&C). A plaintiff is "estopped from avoiding arbitration as required under [an agreement] while asserting claims that are linked with the provisions of that same Agreement." *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 505 (S.D.N.Y. 2009). In *Bimota*, for example, the court compelled arbitration and rejected the plaintiff's argument that it never agreed to arbitrate where the plaintiff's claims were "tightly intertwined with the terms of the Agreement," which contained an arbitration provision. *Id.* at 505–6. The court held that the plaintiff was estopped from "rely[ing] on the contract when it works to its advantage [by establishing the claim], and repudiat[ing] it when it works to his disadvantage [by requiring arbitration]." *Id.* at 505 (brackets in original). Another court used similar logic to compel arbitration of breach-of-contract claims, reasoning that the plaintiffs could not "rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage." *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966). "To permit them to do so would not only flout equity, it would do violence, we think, to the congressional purpose underlying the Federal Arbitration Act." *Id.*

Jager is also required to arbitrate under the law of New York, where Jager's agreement with DoorDash was formed and performed. New York law "strongly favor[s] enforcing arbitration agreements," *Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 453 n.1 (S.D.N.Y. 2016), and recognizes that courts should give effect to "'clear and unmistakable' agreement[s] to arbitrate arbitrability," *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 n.1 (2d Cir. 2005). Under New York law, courts evaluate "(1) whether the parties made a valid agreement to arbitrate; (2) if so,

12

whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if it were asserted in state court." *Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552, at *9 (S.D.N.Y. Sept. 22, 2016). All three requirements are met here: the parties entered into a valid agreement under New York law, DoorDash has complied with the parties' agreement to arbitrate, and DoorDash does not allege that Jager's claims would be time-barred if asserted in state court.

Because Jager agreed to arbitrate any dispute with DoorDash, the Court should hold her to her agreement and grant the motion to compel arbitration.

## C.    The Arbitrator Must Resolve Any Challenges to the Scope and Validity of the Arbitration Agreement

To the extent Jager argues that the arbitration agreement is invalid or does not cover this dispute, the parties delegated these issues to the arbitrator. In any event, the parties' agreement is valid, and the dispute at issue is clearly within its scope.

### 1.    The Arbitrator Must Decide any Challenges to the Agreement's Validity or Enforceability

Because the parties agreed to delegate all issues of arbitrability to the arbitrator, Cramer Decl., Ex. C § 14(d), any issues Jager may raise about the validity or scope of the parties' agreement are for the arbitrator to decide. The Supreme Court has upheld the delegation of "'gateway' questions of 'arbitrability,'" including whether the parties formed an arbitration agreement and "whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the court to enforce." *Id.* at 70. If the parties "clearly and unmistakably" agree to delegate questions of arbitrability to the arbitrator, the arbitrator must decide threshold issues. *Levy v. Credit Plus, Inc.*, 2023 WL 2644352, at *9 (S.D.N.Y. Mar. 27, 2023) (Karas, J.) (enforcing delegation clause and granting motion to

compel arbitration); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (similar).

Courts regularly uphold delegation clauses in arbitration agreements.

- The Second Circuit "conclude[d] that the parties intended to arbitrate the issue of arbitrability" in a dispute between a bank and two of its customers because the parties' agreement stated that they would arbitrate "any and all controversies which may arise" concerning the customers' account. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1195, 1202 (2d Cir. 1996). The court reasoned that "[t]he words 'any and all'" in a delegation clause "are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration." *Id.* at 1199.

- Another court similarly found that questions about the validity of an arbitration agreement were for the arbitrator to resolve because the agreement provided that "*any* dispute arising out of or related to this Agreement . . . shall be referred to final and binding arbitration pursuant to the procedures of the American Arbitration Association." *Foran v. NFL*, 2019 WL 2408030, at *2–3 (S.D.N.Y. June 7, 2019) (emphasis added).

- In a case against DoorDash, a court in this District held that the 2020 version of DoorDash's Merchant Terms of Use "plainly delegates the question of arbitrability to the arbitrator." *Micheli,* 588 F. Supp. 3d at 490. Those terms stated that the arbitrator "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." *Id.* In another case interpreting DoorDash's delegation clause, a court in the Eastern District of New York similarly held that it "may not reach Plaintiff's unconscionability argument because the parties have clearly and unmistakably agreed to delegate issues of enforceability of the

14

arbitration agreement to the arbitrator" based on identical language in DoorDash's T&C. *Arkin*, 2020 WL 4937825, at *5.

Here, the Court should likewise enforce the delegation clause to which the parties agreed. Every version of the T&C to which Jager agreed contains a delegation clause with language identical to that in *Micheli* and *Arkin*, providing that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement." Cramer Decl., Ex. C § 14(d).

Moreover, the T&C expressly incorporate the arbitration providers' rules, which separately delegate questions of arbitrability to the arbitrator. The Second Circuit has held that, where the parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp.*, 398 F.3d at 208. DoorDash's T&C provide that "[t]he arbitration will be conducted by ADR Services, Inc. under its rules and pursuant to the terms of this Agreement." Cramer Decl., Ex. C § 14(c)(i). ADR Services' rules contain a clear delegation clause: "Unless the issue of arbitrability has been previously determined by the court, the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Holecek Decl., Ex. H at 6. The express incorporation of the ADR Services rules constitutes further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability.

### 2. The Gateway Issues Under the FAA Are Satisfied

Given the unmistakable delegation clause in the T&C, the arbitrator, and not this Court, should determine the "gateway" issues of the validity and scope of the parties' arbitration agreement. But even if the Court resolves arbitrability issues, it should still compel Jager to

15

arbitrate because both "gateway" issues under the FAA are met. The arbitration agreement is a valid contract, satisfying all the requirements of New York law, and the terms of the agreement cover Jager's claims because those claims arise out of DoorDash's services. Jager argues that DoorDash breached the arbitration agreement by failing to engage in informal dispute resolution and contends that the agreement is unconscionable, but she is incorrect on both counts—and in any event these questions are also for the arbitrator, not the Court, to decide.

### a.    The Arbitration Agreement Is a Valid Contract

Though the validity of the parties' contract is for the arbitrator and not the Court to decide, there can be no doubt that the arbitration agreement in this case is in fact valid. "[A]rbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), governed by ordinary state-law contract principles, *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under the law of New York—where Jager resides and where the contract was both formed and performed—"a contract is enforceable if there is a meeting of the minds between the parties regarding material elements of the agreement." *Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*, 2000 WL 1457079, at *3 (S.D.N.Y. Sept. 28, 2000) (cleaned up) (compelling arbitration). Those material elements "include the identification of the parties, a sufficient description of the subject matter, and consideration." *Id*. The parties' arbitration agreement meets these requirements.

***First***, the T&C clearly identify the parties, noting on the first page that the T&C "CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND DOORDASH." Cramer Decl., Ex. C at 1. Jager agrees, alleging that "[t]he DoorDash Consumer Terms and Conditions are, as expressly stated therein, a legal agreement between DoorDash and Jager, who is a consumer using DoorDash's services." Compl. ¶ 255.

*Second*, the T&C sufficiently describe the subject matter of the arbitration agreement, stating in part that "[y]ou agree that any dispute or claim arising out of or relating in any way to . . . your access or use of the Services as a User of the Services . . . will be resolved by binding arbitration, rather than in court." Cramer Decl., Ex. C § 14(a).

*Third*, the arbitration agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes. Cramer Decl., Ex. C § 14(a). Courts routinely find that mutual promises to arbitrate satisfy the consideration requirement. *E.g.*, *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (Karas, J.) (compelling arbitration and finding that "the [Arbitration] Agreement by itself contains sufficient consideration because . . . it mutually binds both parties to submit claims exclusively to arbitration"); *Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) ("promise to arbitrate was sufficient consideration").

There has been a "meeting of the minds" as to each of these essential elements. *Personalized Media*, 2000 WL 1457079, at *3. In signing up for DoorDash and DashPass, Jager affirmatively acknowledged her intent—after ample opportunity for review—to be bound by the arbitration agreement in the T&C.

### b.    The Arbitration Agreement Covers Jager's Claims

Whether Jager's claims come within the scope of the parties' arbitration agreement is also for the arbitrator, and not the Court, to decide, because the parties specifically delegated that question to the arbitrator. *See Arkin*, 2020 WL 4937825, at *4–5. But if the Court weighs in on this issue, it should hold that the agreement covers Jager's claims.

"Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "To determine whether the parties intended to submit a given matter to arbitration, the general rule is that courts 'should apply ordinary state-law principles that govern the formation of

contracts,'" *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010), keeping in mind that both New York law and the FAA "strongly favor enforcing arbitration agreements," *Badinelli*, 183 F. Supp. 3d at 453 n.1.  Disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers*, 363 U.S. at 582–83.  That is, "[d]oubts should be resolved in favor of coverage." *Id.* at 583.  For instance, in a case where the parties agreed to arbitrate "all disputes arising out of or in relation to" a trading agreement, the Second Circuit compelled arbitration of a dispute over a separate agreement the parties had entered into because that separate agreement "stemmed" from the trading agreement. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250–52 (2d Cir. 1991).

There is no ambiguity here.  Jager agreed to arbitrate "any dispute or claim arising out of or relating in any way to" (i) the subject matter of the T&C, (ii) Jager's "access or use" of the DoorDash Marketplace, (iii) "any advertising or marketing communications regarding DoorDash" or its services, (iv) "any products or services sold or distributed through" DoorDash, or (v) "any aspect of [her] relationship or transactions with DoorDash."  Cramer Decl., Ex. C § 14(a).  Jager alleges that DoorDash misrepresented how its services work, and challenges limitations DoorDash allegedly imposed on her account.  This is a dispute relating to Jager's use of the DoorDash Marketplace and associated products and services, and relates to Jager's relationship and transactions with DoorDash.  Thus, Jager's claims fall squarely within the scope of the arbitration agreement in the T&C.  Jager also alleges that a laundry list of DoorDash's purported actions "exceed[] the scope of DoorDash's [T&C]," including relating to the vetting of Dashers, various other Dasher conduct that allegedly "placed [her] in danger," and DoorDash's alleged requirement that she submit an image of her payment method to DoorDash.  Compl. ¶¶ 252, 253.  But all of

18

those allegations relate to Jager's "access or use" of DoorDash, to DoorDash's products and services, and to her "transactions with DoorDash," placing them within the explicit scope of the arbitration agreement.  Cramer Decl., Ex. C § 14(a).

### c.    Jager's Allegations That DoorDash Breached the T&C Are Meritless but Must Be Resolved by the Arbitrator

Jager argues that she "has been relieved of her obligation to comply with" her agreement to arbitrate because DoorDash allegedly breached the T&C.  Compl. ¶ 323.  Specifically, Jager claims that DoorDash breached the T&C by purportedly deactivating Jager's account in retaliation for her seeking an informal dispute resolution conference and, separately, for failing to meet and confer with Jager within 60 days of her notice.  These arguments fail for three reasons:  (i) these disputes have been delegated to the arbitrator, (ii) DoorDash did not retaliate against Jager and did not fail to meet and confer with her within 60 days (indeed, she filed suit against DoorDash before that 60-day period ran), and (iii) even if DoorDash did breach the T&C (it did not), that still wouldn't relieve Jager of her obligation to arbitrate.

***First***, Jager must take these disputes up with the arbitrator.  Absent a successful challenge to the delegation clause itself, the clause remains enforceable—and Jager does not challenge the delegation clause.  *Rent-a-Center*, 561 U.S. at 72 (reserving questions of arbitrability for arbitrator where the plaintiff did not "challenge[] the delegation provision specifically"); *see also Foran*, 2019 WL 2408030, at *3 (similar).  If a plaintiff could renege on its agreement to arbitrate by alleging that the defendant breached the contract, then virtually every plaintiff could sidestep its arbitration agreement.  As the New York Court of Appeals reasoned in rejecting that argument and compelling the parties to arbitrate, "it would be the rare arbitration agreement that could not be nullified merely by the contention of illegality in performance."  *In re Nat'l Equip. Rental*, 28 N.Y.2d 639, 641 (1971); *see also In re Glekel*, 30 N.Y.2d 93, 96–98 (1972) (whether the defendant

19

breached the parties' agreement fell "within the exclusive jurisdiction of the arbitrator under th[e] arbitration clause").

In her response to DoorDash's pre-motion letter, Jager argued that the Court must decide whether DoorDash complied with the informal dispute resolution requirement in the parties' arbitration agreement, because it is a "condition precedent" to the initiation of arbitration. Dkt. 22 at 2. But courts have specifically held that an arbitrator must decide whether "conditions precedent" to arbitration have been met. "[W]hether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (quoting comment to Revised Uniform Arbitration Act of 2000). For instance, in *EX.CO Techs. Ltd. v. Empire Media Grp. Inc.*, 2023 WL 5035175 (S.D.N.Y. Aug. 8, 2023), the court rejected the defendant's argument that it was not bound by an arbitration agreement because the plaintiff "failed to comply with a condition precedent to the arbitration in the Terms of Service" by failing to engage in informal resolution. *Id.* at \*2. The court reiterated that "[c]ourts have consistently held that a dispute of whether a condition precedent has been met is a procedural question for arbitrators, not the court." *Id.* at \*3; *see also Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*, 2023 WL 2138693, at \*8 (S.D.N.Y. Feb. 21, 2023) ("[A]ny argument that the preconditions to arbitration have not been met must be resolved by the arbitrator."); *Morelli v. Alters*, 2020 WL 1285513, at \*10 (S.D.N.Y. 2020) (a failure by a party to engage in pre-arbitration mediation "is a question of procedural arbitrability and thus must be determined by an arbitrator"). Even when the agreement is silent on this point, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp., PLC v. Rep. of Argentina*, 572 U.S. 25, 34 (2014).

20

Jager cited *All Metro Health Care Services, Inc. v. Edwards*, 57 A.D.3d 892 (N.Y.S.C. App. Div. 2008), for the proposition that courts should determine whether a condition precedent to arbitration exists.  Dkt. 22 at 2.  But *All Metro Health* applied New York law, not the FAA, and arbitration cases applying "purely . . . New York law" are "inapposite" where (as here) the FAA applies.  *Wu v. Uber Techs., Inc.*, 78 Misc. 3d 551, 578 (N.Y. Sup. Ct. 2022), *aff'd*, 219 A.D.3d 1208 (2023), *aff'd*, 43 N.Y.3d 288 (2024).  In any event, New York law, under which *All Metro Health* was decided, holds that an arbitrator (not a court) should determine whether parties have complied with an informal dispute resolution provision in an arbitration agreement.  In *Ostberg v. Dragan Litric*, 915 N.Y.S.2d 256 (N.Y.S.C. App. Div. 2011), for example, the court declined to adjudicate issues relating to informal dispute resolution because that process involves "conditions *in* arbitration, which are beyond the scope of a court's authority to address."  *Id.* at 258.

**Second**, even if the Court resolves these disputes (it should not), Jager's claims are meritless.  Jager first speculates that DoorDash retaliated against her by imposing security measures on her account and later deactivating her account.  Compl. ¶ 324; *see also* Dkt. 22 at 2.  But Jager was simply prompted to enter a PIN ███████████████████████████████, and DoorDash deactivated her account because it detected suspicious activity on the account that its reviewers believed likely indicated fraud.  Bellini Decl. ¶¶ 5–8.  In fact, the DoorDash fraud team that deactivated Jager's account had no knowledge that Jager had submitted a dispute-resolution notice.  *Id.* ¶ 9.  Nor did DoorDash inform Jager's bank or other online platforms of the suspected fraudulent activity involving her account, contrary to her allegations.  *Id.* ¶ 11.

Jager also alleges that DoorDash failed to hold an informal dispute resolution conference within 60 days of Jager's initial dispute resolution notice, and that this "reliev[es] [Jager] of any

21

obligation she had under" the T&C.  Dkt. 22 at 2; *see also* Compl. ¶¶ 318, 323.  In fact, Jager was the one who breached her obligations by initiating the informal dispute resolution process and then filing a complaint in federal court before DoorDash even had a chance to respond.  *See* Kremer Decl. ¶ 2.  DoorDash nonetheless reached out to Jager well before the 60-day period expired to engage in dispute resolution.  *Id.* ¶ 3.  DoorDash followed up with Jager's counsel repeatedly, and eventually participated in a conference that lasted over 90 minutes, in which, at Plaintiff's request, DoorDash's in-house counsel and outside counsel were joined by a member of DoorDash's Strategy and Operations team.  *Id.* ¶¶ 8, 10.  Not only did DoorDash participate in the conference, it followed up with an offer to resolve Jager's claims, to which Jager never responded.  *Id.* ¶¶ 11–12.  Not once during this entire process did Jager's counsel suggest that DoorDash had somehow breached any obligation to engage in informal dispute resolution.  *Id.* ¶ 9.

Rather, the chronology suggests that *Jager's* counsel waited until the 61st day to meaningfully engage in the dispute resolution process.  *See* Kremer Decl. ¶ 5 & Ex. E at 8–9.  "A party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition."  *Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of New York*, 28 N.Y.2d 101, 106 (1971); *see also Stern v. Gepo Realty Corp.*, 289 N.Y. 274, 277 (1942) ("[O]ne may not take advantage of a condition precedent, the performance of which he himself has rendered impossible.").  And given that, while the parties were discussing the dispute-resolution process, Jager's counsel never stated that Jager wished to have an informal dispute resolution conference within 60 days and instead assented to DoorDash's proposal that the parties table discussions until after the holidays, *see* Kremer Decl. ¶ 4 & Ex. E at 10, she should be estopped from arguing that DoorDash breached the T&C by failing to timely engage in dispute resolution.  *See In re Ellison Assocs.*, 63 B.R. 756, 765 (S.D.N.Y. 1983) (party

22

that had duty to speak in response to representations about a property, but remained silent, was estopped from asserting that representations were incorrect).

*Third*, even if DoorDash breached its contract with Jager by retaliating against her or failing to timely meet and confer (and DoorDash did no such thing), that partial breach of contract would not release Jager from her agreement to arbitrate.  It is black-letter law that a party's partial breach of a contract does not excuse the other party from performance.  *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117–18 (2d Cir. 2006).  Jager contends without support that DoorDash's alleged breach of the informal dispute resolution provision was "material."  Dkt. 22 at 2–3.  But "[f]or a breach to be material, it must go to the root of the agreement between the parties." *New Windsor*, 442 F.3d at 117 (cleaned up).  DoorDash's purported delay of a week or two in scheduling a dispute resolution conference with Jager does not even go to the "root" of the arbitration agreement, much less the T&C.

Further, "an arbitration provision is severable from the remainder of the contract" under the FAA. *Rent-A-Center*, 561 U.S. at 70–71.  Thus, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id*. at 70.  For example, in *Buckeye Check Cashing*, the Supreme Court enforced an arbitration provision, though the plaintiff argued that the contract as a whole was void.  546 U.S. at 445–49.  The same result should follow here, particularly because the arbitration agreement is severable from the rest of the T&C by its own terms.  The November 2024 T&C provide that the invalidity of any given provision "shall not affect the validity of the remaining provisions of this Agreement," and that "[t]his Arbitration Agreement will survive any termination of your relationship with DoorDash."  Cramer Decl., Ex. C §§ 14(j), 25(c).  Even Jager's claims challenging the arbitration agreement itself do not invalidate the arbitration agreement, because

23

*each term* of the arbitration agreement is independently severable. Specifically, the T&C provide that, "[i]n the event any portion of this Arbitration Agreement is deemed unenforceable, the remainder of this Arbitration Agreement will be enforceable." *Id.* § 14(l).

### d.    Jager's Allegations that the Agreement Is Unconscionable Are Also Meritless but Must Be Resolved by the Arbitrator

Jager has also argued that the arbitration agreement is unconscionable. Dkt. 22 at 3. But this again is for the arbitrator to decide. In *Arkin*, for instance, the court rejected a similar challenge to DoorDash's T&C, reasoning that "the court may not reach Plaintiff's unconscionability argument because the parties have . . . agreed to delegate issues of enforceability of the arbitration agreement to the arbitrator." 2020 WL 4937825, at *5.

If the Court does weigh in on this issue, then the fact that Jager could have opted out of arbitration establishes that the agreement is not unconscionable. Courts regularly hold that an arbitration agreement is not unconscionable if it provides an opportunity to opt out. *See, e.g.*, *Valle v. ATM Nat., LLC*, 2015 WL 413449, at *6 (S.D.N.Y. Jan. 30, 2015) (holding an arbitration agreement was "not unconscionable as plaintiffs had 45 days to opt out"); *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55–56 (E.D.N.Y. 2017) (arbitration agreement with 30-day opt-out provision not unconscionable). Here, DoorDash conspicuously notified Jager of her right to opt out of arbitration. *Supra* at 4. Jager had 30 days to notify DoorDash of her desire to opt out of arbitration after signing up for DoorDash, but did not do so. *Id.*; Cramer Decl. ¶ 14. This meaningful opportunity to opt out precludes any finding of procedural unconscionability.

In her response to DoorDash's pre-motion letter, Jager cited *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985), for the proposition that "[r]equiring arbitration would be unconscionable and would shield DoorDash's conduct and deprive Plaintiff of the opportunity to effectively vindicate her claims." Dkt. 22 at 3. In fact, *Mitsubishi Motors*

24

stands for the opposite principle.  The Court there *enforced* an arbitration agreement and held that arbitration is a perfectly suitable forum for parties to vindicate their claims, noting that "[t]here is no reason to assume . . . that . . . arbitration will not provide an adequate mechanism."  *Mitsubishi Motors*, 473 U.S. at 636.  Jager also cited *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), for the proposition that courts can "revoke" arbitration agreements "if requiring arbitration would violate public policy."  Dkt. 22 at 3.  But *Concepcion*, too, held the exact opposite.  The Court in that case held that the FAA *preempted* a California rule regarding the unconscionability of certain class arbitration waivers, explaining that "our cases place it beyond dispute that the FAA was designed to promote arbitration," and describing the FAA as "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Concepcion*, 563 U.S. at 345–46, 352.  If anything, these cases only confirm that questions of unconscionability are for the arbitrator to decide.

**D.    Alternatively, Jager's Claims Must Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction**

The Court may also choose to treat this motion as a motion to dismiss Jager's claims pursuant to Federal Rule of Civil Procedure 12(b)(1), given that, for the reasons set forth above, this Court lacks jurisdiction to hear Jager's claims.  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018) ("[B]ecause a motion to compel arbitration goes to the Court's power to hear a case, such a motion is analogous to—and sometimes treated as—a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).").  If the Court does not compel Jager to arbitrate her claims, it should dismiss those claims for lack of subject-matter jurisdiction.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Rosehoff Ltd.*

25

*v. Cataclean Americas LLC*, 2013 WL 2389725, at *6 (W.D.N.Y. May 30, 2013) (internal quotation marks omitted). To prevail on a Rule 12(b)(1) motion, the "plaintiff bears the burden of proving subject matter jurisdiction." *Cartagena Enters., Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992, at *3 (S.D.N.Y. Oct. 16, 2013) (cleaned up) (granting motion to dismiss and compel arbitration under Rule 12(b)(1)). In ruling on a Rule 12(b)(1) motion, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," and, in fact, the court may take into account "evidence outside the pleadings." *Id.* (cleaned up).

Jager cannot carry her burden to show that this Court has jurisdiction over her claims. She cannot in good faith argue that she did not enter into the arbitration agreement contained in the T&C, given that she repeatedly alleges she did. *Supra* at 3. She cannot assail the Parties' unmistakable delegation clause, which reserves questions of arbitrability for the arbitrator (*supra* at 13–15). And, even if she could, she could not argue that the arbitration agreement is somehow invalid or unconscionable, or that her claims fall outside its explicit scope. *Supra* at 15–25. This Court therefore lacks subject matter jurisdiction over Jager's claims.

### E.    Jager's Claims Should Be Stayed While Arbitration Proceeds

The FAA provides that a court, upon granting a motion to compel, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); *Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (the FAA "provides in § 3 for a stay of proceedings in a case where a court is satisfied that the issue before it is arbitrable under the agreement"). New York law also provides that courts "shall" stay the action after compelling arbitration. N.Y. C.P.L.R.

26

§ 7503; *see also Zafar v. Fast Track Leasing, LLC*, 79 N.Y.S.3d 280 (App. Div. 2018) (affirming order compelling arbitration and staying proceedings under both FAA and New York law); *Zambrano*, 2016 WL 5339552, at *10 (compelling arbitration and staying action under New York law). DoorDash respectfully requests that the Court stay this case pending completion of arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the Court should compel Jager to arbitration and stay all further proceedings pending completion of arbitration.

Dated:    August 15, 2025                    **GIBSON, DUNN & CRUTCHER LLP**


By: */s/ Michael Holecek*

GIBSON, DUNN & CRUTCHER LLP

Michael Holecek (*pro hac vice*)
mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213.229.7000

Natalie J. Hausknecht (*pro hac vice*)
nhausknecht@gibsondunn.com
1900 Lawrence Street, Suite 3000
Denver, CO 80202
Phone: 303.298.5700

Sean Howell (*pro hac vice*)
showell@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Phone: 415.393.8200

*Attorneys for Defendant DoorDash, Inc.*

28

## CERTIFICATION

I hereby certify, pursuant to Local Rule 7.1(c) and section II.B of the Court's Individual Rules of Practice, that this memorandum of law contains 8,741 words.

By: */s/ Michael Holecek*

GIBSON, DUNN & CRUTCHER LLP

Michael Holecek (*pro hac vice*)
mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Phone: 213.229.7000

*Attorneys for Defendant DoorDash, Inc.*

29