UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHYLLIS JAGER,

                            Plaintiff,

           v.

DOORDASH, INC.,

                            Defendant.

No. 25-CV-01929 (KMK)

OPINION & ORDER

Appearances:

Daniel Z. Goldman, Esq.
Bienert Katzman Littrell Williams LLP
San Clemente, CA
*Counsel for Plaintiff*

Iris Maria Liliana Velasquez, Esq.
Joel H. Rosner, Esq.
Tarter Krinsky & Drogin LLP
New York, NY
*Counsel for Plaintiff*

Michael Holecek, Esq.
Gibson, Dunn & Crutcher LLP
Los Angeles, CA
*Counsel for Defendant*

Natalie Hausknecht, Esq.
Gibson, Dunn & Crutcher LLP
Denver, CO
*Counsel for Defendant*

Sean F. Howell, Esq.
Gibson, Dunn & Crutcher LLP
San Francisco, CA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Phyllis Jager ("Plaintiff") brings this Action against DoorDash, Inc. ("Defendant" or "DoorDash"), alleging Defendant's security policies and management of Plaintiff's account and personal information breached Defendant's Terms & Conditions and state and federal law. Before the Court is a narrow issue—whether this case should proceed before the Court, or in arbitration. Because Plaintiff agreed to arbitrate this dispute and that agreement delegates issues of arbitrability to the arbitrator, the Court grants Defendant's Motion to Compel Arbitration and stays the case pending arbitration. And because the Court does not consider the parts of the declaration Plaintiff moves to strike in compelling arbitration, the Court denies Plaintiff's Motion to Strike as moot.

## I. Background

### A. Factual Background

The following facts are only those relevant to the Motion to Compel Arbitration. Plaintiff is a DoorDash customer of several years. She created a DoorDash account on July 31, 2021. (Cramer Decl. ¶ 6 (Dkt. No. 32).) While her account was active, she "placed 4,456 orders," (*id.* ¶ 13), which she alleges totaled "at least $3.4 million," as she ordered meals for "approximately 150 people each working day" at her company, (Redacted Compl. ¶ 120 (Dkt. No. 4)).[1]

As a DoorDash customer and user, Plaintiff agreed to Defendant's Terms and Conditions. (*See* Redacted Compl. ¶ 83 ("[P]ursuant to the . . . Consumer Terms and Conditions agreement between [Plaintiff] and DoorDash . . .").) Those Terms and Conditions include an arbitration

---

[1] The Court considers only the redacted filings in resolving this Motion and accordingly grants the Motion to Seal the new filings here, (*see* Dkt. No. 39), for the same reasons it previously granted a Motion to Seal, (*see* Dkt. No. 35).

agreement.  (*See* Redacted Compl. Ex. A, at 2 ("SECTION 14 SETS FORTH OUR

ARBITRATION AGREEMENT WHICH WILL REQUIRE DISPUTES BETWEEN US TO BE

SUBMITTED TO ARBITRATION, WITH LIMITED EXCEPTIONS . . .").)  The arbitration

agreement provides "that any dispute or claim arising out of or relating in any way to the subject

matter of the Agreement [*i.e.*, the Terms and Conditions], to [Plaintiff's] access or use of the

Services as a User of the Services, . . . or to any aspect of [her] relationship or transactions with

DoorDash as a User . . . will be resolved by binding arbitration, rather than in court, except as

otherwise required by law . . . or as otherwise provided in this Arbitration Agreement."  (*Id.* at

18.)  Plaintiff also had the right to opt out of the arbitration portion of the Terms and Conditions,

(*id.* at 2, 23), which she did not timely exercise, (Cramer Decl. ¶ 14).

On November 6, 2024, Plaintiff "sent a notice to DoorDash advising it of her intent to

initiate an informal dispute resolution conference . . . to address the ongoing safety and security

concerns with [Defendant's] application and services as well as to provide potential solutions to

improve those services."  (Redacted Compl. ¶¶ 145–46.)  The Terms and Conditions obligate

users to pursue an informal dispute resolution conference before initiating a claim "within 60

days after the other party receives such notice, unless an extension is mutually agreed upon."

(Redacted Compl. Ex. A, at 19; Compl. ¶ 147.)  Later that month, Plaintiff "placed an order that

triggered a review of her account," leading Defendant to require her to enter a PIN to receive an

order through Defendant's service.  (Bellini Decl. ¶¶ 5–7 (Dkt. No. 31).)  While Defendant

contends the fraud review "was implemented as a standard security measure" related to an order

Plaintiff had placed and that Defendant's fraud team was unaware of Plaintiff's notice of intent

to pursue informal dispute resolution, (*id.* ¶¶ 6–9), Plaintiff contends this was "blatant

retaliation" for her notice, (Redacted Compl. ¶ 175).  Defendant also requested information from

Plaintiff's debit card to complete a transaction, after which Plaintiff alleges that her information "appear[ed] on the Dark Web." (*Id.* ¶¶ 191–97, 220.) Defendant deactivated Plaintiff's account on November 21, 2024, after Defendant's fraud team completed their review. (Bellini Decl. ¶ 8.) Plaintiff alleges that decision was also "pretextual" and retaliatory for her November 6 notice. (Redacted Compl. ¶ 231.)

Plaintiff first sued Defendant on December 2, 2024, within the 60-day deadline for an informal dispute resolution conference that her Complaint and the Terms of Service describe. Compl., *Jager v. DoorDash, Inc.*, No. 24-CV-9195 (S.D.N.Y. Dec. 2, 2024), Dkt. No. 1. Plaintiff voluntarily dismissed that claim on March 7, 2025, the same day she filed her Complaint in this Action. Notice of Voluntary Dismissal, *Jager v. DoorDash, Inc.*, No. 24-CV-9195 (S.D.N.Y. Mar. 7, 2025), Dkt. No. 15. Plaintiff asserts eight causes of action—breach of Defendant's Terms and Conditions, (Redacted Compl. ¶¶ 254–65); breach of the covenant of good faith and fair dealing Plaintiff alleges the Terms and Conditions impose, (*id.* ¶¶ 266–74); defamation, premised on the theory that requiring Plaintiff to enter a PIN "publicly announced" to delivery workers that Plaintiff "was a fraud," causing her to suffer $500,000,000 in damages, (*id.* ¶¶ 275–307); common-law fraud, contending Defendant's fees for "Express" service did not go to Defendant's delivery workers or in fact expedite Plaintiff's deliveries, (*id.* ¶¶ 308–14); a declaratory judgment that the termination of her account breached Defendant's Terms and Conditions' dispute resolution procedures, (*id.* ¶¶ 315–29); false advertising concerning background checks for delivery workers and user fees, (*id.* ¶¶ 330–38); and state deceptive conduct and false advertising claims on the same facts, (*id.* ¶¶ 339–50).

B.  Procedural History

Plaintiff filed a sealed Complaint on March 7, 2025, (Compl. (Dkt. No. 1)), and a redacted version of the Complaint on March 10, 2025, (Redacted Compl.).  Defendant moved to compel arbitration and stay the case pending arbitration on August 15, 2025.  (Mot. to Compel Arbitration & Stay Case (Dkt. No. 27); Redacted Mem. of L. in Supp. re: Mot. to Compel Arbitration & Stay Case ("Def.'s Mem.") (Dkt. No. 29).)  Plaintiff opposed the motion on September 22, 2025.  (Mem. of L. in Opp'n Re: Mot. to Compel Arbitration & Stay Case ("Pl.'s Opp.") (Dkt. No. 41).)  Plaintiff also moved to strike one of Defendant's submissions on the same day.  (Pl.'s Cross-Mot. to Strike (Dkt. No. 42).)  Defendant opposed Plaintiff's Motion to Strike on October 6, 2025, (Defs.' Opp'n to Pl.'s Cross-Mot. to Strike (Dkt. No. 44)), and replied in support of their Motion to Compel Arbitration on October 20, 2025, (Reply Mem. of L. in Supp. re: Mot. to Compel Arbitration & Stay Case ("Reply") (Dkt. No. 45)).

## II.  Discussion

A.  Standard of Review

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  However, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation and quotation marks omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citations omitted)).

In resolving a motion to compel arbitration, courts "appl[y] a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). A court must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (citation omitted). Under this standard, the Court evaluates "[a]llegations related to the question of whether the parties formed a valid arbitration agreement . . . to determine whether they raise a genuine issue of material fact." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). "If there is a genuinely disputed factual issue whose resolution is essential to the determination of the applicability of an arbitration provision, a trial as to that issue will be necessary. . . ." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof."). However, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank*, 661 F.3d at 172 (citation and quotation marks omitted); *see also* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561–62 (S.D.N.Y. 2013) ("[A] [c]ourt must grant a motion to compel arbitration if the pleadings, discovery materials

before the [c]ourt, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.").

    B.  <u>Analysis</u>

        1.  <u>Motion to Compel Arbitration</u>

"In this Circuit, courts follow a two-part test to determine the arbitrability of claims . . . consider[ing] (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advs. Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (noting that a court "should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue" (emphasis omitted)).

The Court begins with the first question: whether the Parties have entered into a valid agreement to arbitrate.  Plaintiff contends "Defendant has failed to adduce proper evidence that Plaintiff entered into an arbitration agreement with Defendant," claims Plaintiff's "acceptance [of the Terms and Conditions] [wa]s not express," faults Defendant for not including "a screenshot of what [DoorDash's] sign-up screen looks like" when she agreed to the Terms and Conditions she sues under, then filed a pre-motion letter to strike, *inter alia*, Defendant's inclusion of those screenshots in its reply materials.[2]  (Pl.'s Opp. 9–11; Letter from Joel Rosner to Court (dated Nov. 4, 2025) (Dkt. No. 48).)  But Plaintiff's own Complaint avers more than half a dozen times that she personally agreed to and is bound by Defendant's 2024 Terms and

---

[2] Leave to file that motion is denied as moot because the Court does not, and need not, consider the new information in the Reply to grant Defendants' Motion.

Conditions,[3] and even attaches those Terms and Conditions to her Complaint. (*See* Redacted Compl. Ex. A, at 2). Moreover, the attached Terms and Conditions reference the agreement to arbitrate in bold, all-caps lettering on the very first page. (Redacted Compl. Ex. A, at 2.) So, because in her Complaint, "Plaintiff does not dispute that she accepted [Defendant's] Terms [and Conditions], which includes an Arbitration Provision," "she cannot claim that she did not agree to arbitrate." *Spates v. Uber Techs., Inc.*, No. 21-CV-10155, 2023 WL 3506138, at *2 (S.D.N.Y. Mar. 31, 2023); *see also Lewis v. Samsung Elecs. Am.*, No. 22-CV-10882, 2023 WL 7623670, at *7 (S.D.N.Y. Nov. 14, 2023) ("Therefore, by necessary inference from . . . [plaintiff's] own admission [in the complaint], [p]laintiff assented to the Arbitration Agreement."). (*See generally* Pl's Opp.)

The combination of these facts resolves the question whether Plaintiff accepted an agreement to arbitrate. Not only does Plaintiff state in her Complaint that she did so, but Plaintiff is suing for breach of the very contract containing the arbitration agreement, as the first, second, and fifth causes of action are explicitly predicated on breaches of the Terms and Conditions (including the arbitration agreement); and she even attempts to hold select parts of the arbitration agreement against Defendant in her Complaint. (*See* Redacted Compl. ¶¶ 254–74,

---

[3] (*See* Redacted Compl. ¶ 139 ("The DoorDash Consumer Terms and Conditions, an agreement between DoorDash and each user of its services, including [Plaintiff] . . ."); *id.* ¶ 252 ("In agreeing to DoorDash's Terms and Conditions and Privacy Policy, [Plaintiff] did not agree and submit to . . ."); *id.* ¶ 255 ("The DoorDash Consumer Terms and Conditions are, *as expressly stated therein, **a legal agreement between DoorDash and Jager**, who is a consumer using DoorDash's services." (emphasis added)); *id.* ¶ 267 (same); *id.* ¶ 258 ("Jager has performed all her obligations under the Consumer Terms and Conditions."); *id.* ¶ 324 ("DoorDash's Terms and Conditions imply that **all parties adhere to these terms in [their] entirety**." (emphasis added)); *id.* ¶ 325 ("Jager was unaware that such egregious exposure [of her information] was even a consideration . . . and certainly by no means did Jager ever agree to such *when accepting the Terms and Conditions*[.]" (emphasis added)).

315–29; *id.* ¶ 149 (directly quoting the arbitration agreement to underscore Defendant's

obligation to engage in "good-faith informal efforts to resolve disputes"); *supra* note 3.)[4]  "Since

plaintiff is relying upon the terms of the contract for the relief [s]he seeks in this action, [s]he

may not invoke part of the contract and disregard its other provisions requiring arbitration."

*Johnson v. Kings Cnty. Lighting Co.*, 141 N.Y.S.2d 411, 414 (Sup. Ct. 1955); *see also Bimota*

*SPA v. Rousseau*, 628 F. Supp. 2d 500, 505 (S.D.N.Y. 2009) ("[Plaintiff] is estopped from

avoiding arbitration as required under the Agreement while asserting claims that are linked with

the provisions of that same Agreement." (applying New York law)); *O'Brien v. Moszynski*, 475

N.Y.S.2d 133, 134 (App. Div. 1984) ("A party who has signed an agreement may not

simultaneously rely upon it as the foundation of the claim for damages and repudiate a provision

contained therein to the effect that the right to a trial by jury is waived.").[5]  Perhaps, as Plaintiff

alleges, Defendants breached the arbitration agreement, and perhaps they did not, but Plaintiff

cannot now argue Defendants did not carry their burden to show there was an agreement to

arbitrate in the first place.  Plaintiff is therefore "stuck with what [s]he signed," and what she

signed clearly includes an arbitration agreement.  *Brkic v. Dumbo Moving & Storage, Inc.*, No.

22-CV-07029, 2023 WL 128801, at *5 n.3 (S.D.N.Y. Jan. 9, 2023).

---

[4] The Court accordingly need not reach Plaintiff's argument that under a recent Second Circuit decision, Defendants have not established that she was on inquiry notice of the contents of the Terms and Conditions.  (*See* Pl.'s Opp. 9–11 (citing *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023).)  *Edmundson* involved no claims for breach of the very contract containing the arbitration agreement or efforts to enforce only select parts of the arbitration agreement, *see Edmundson*, 85 F.4th at 701, so equitable estoppel would not have applied there.

[5] As with other substantive elements of contract law in this case, relevant equitable estoppel principles must be supplied by state law.  *See Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 68 n.29 (2d Cir. 2021).  New York law governs this dispute.  (*See* Def.'s Mem. 12.)

The threshold for the second issue is whether arbitrability (*i.e.*, if this dispute can be arbitrated) is for the Court to determine, or for the arbitrator if there is a "valid provision specifically committing such disputes to an arbitrator." *Granite Rock Co.*, 561 U.S. at 299. The arbitration agreement here has such a provision. It provides that the "arbitrator, and not any . . . court . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement." (Redacted Compl. Ex. A, at 21.) "[T]he word 'arbitrability'" may "not even appear in the arbitration agreement," (Pl.'s Opp. 17), but the agreement's language clearly delegates the question of arbitrability to the arbitrator all the same, and the Supreme Court has held such a delegation is valid and enforceable. *See Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (describing a section of an arbitration agreement "provid[ing] that 'the Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this agreement'" as "an agreement to arbitrate threshold issues concerning the arbitration agreement," *i.e.*, "arbitrability"). Accordingly, "[h]ere, as in *Rent-A-Ctr.*, the relevant Arbitration Agreement contains a delegation provision that unambiguously delegates to the arbitrator disputes regarding the Arbitration Agreement's interpretation, applicability, enforceability or formation, including whether any part of the Agreement is void or voidable." *Brkic*, 2023 WL 128801, at *5; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). New York law, which governs Plaintiff's agreement, (*see* Def.'s Mem. 12), also recognizes and enforces delegation clauses like this one. *See, e.g., Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884, 887 (N.Y. 1997) (holding an "important legal and practical exception" to the "proposition that the question of arbitrability is

an issue generally for judicial determination in the first instance" is when there is a "commitment by the parties, nevertheless, to arbitrate even that issue when they clearly and unmistakably [so] provide" (internal quotation marks and citations omitted)).

Plaintiff makes no challenge to the Agreement's delegation provision beyond her argument that there *is* no such provision, which the Court rejects. (*See generally* Pl's Opp.) *See Rent-A-Center*, 561 U.S. at 72 ("Accordingly, unless [Plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). The remaining issues in Plaintiff's Opposition—whether Defendant's conduct waived Defendant's right to arbitrate[6] or breached the arbitration agreement, or whether Plaintiff's claims substantively cannot be arbitrated—are therefore for the arbitrator to resolve. Those issues go to whether the agreement to arbitrate is "enforceab[le]," and whether it is "applicab[le]" to certain claims. (Redacted Compl. Ex. A, at 21.) *See Foran v. Nat'l Football League*, No. 18-CV-10857, 2019 WL 2408030, at *3 (S.D.N.Y. June 7, 2019) ("As a result, since the Court holds that the delegation clauses are valid and enforceable, the arbitrator will

---

[6] While "the Court, rather than an arbitrator, is to decide whether a party has waived its right to arbitration through their litigation conduct," *Melendez v. Ethical Culture Fieldston Sch.*, 789 F. Supp. 3d 316, 333 (S.D.N.Y. 2025) (citation omitted), where litigation has yet to take place, "district courts commonly refer waiver issues to the arbitrator," *McNeil v. LVMH Inc.*, No. 18-CV-11751, 2019 WL 2191786, at *4 (S.D.N.Y. May 21, 2019); *accord Syngenta Crop Prot., LLC v. Ins. Co. of N. Am.*, No. 18-CV-715, 2018 WL 1587601, at *3 (S.D.N.Y. Mar. 29, 2018) ("The question of whether [defendant] has waived its right to arbitrate through its conduct is one for the arbitrator, not this Court."). Here, Plaintiff's claim of waiver is based on exclusively pre-litigation conduct, (*see* Pl.'s Opp. 17–18), and there is a clear delegation of arbitrability to the arbitrator. That issue is accordingly for the arbitrator to decide. *See Bell v. Cendant Corp.*, 293 F.3d 563, 570 (2d Cir. 2002) (holding a district court properly left waiver to the arbitrator when other litigation between the parties "pertain[ed] to entirely different facts," since "[o]rdinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator" (internal quotation marks and citations omitted)).

resolve the arbitrability issues including scope, validity, and enforceability."); *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 196 (E.D.N.Y. 2019) ("But the law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld.").

### 2.  Motion to Strike

Plaintiff moves to strike the Kremer Declaration (Dkt. No. 33) to the extent it describes discussions with Defendant's counsel.  Because the Court can rely on the admissions in the pleadings and other evidence in concluding there was a valid agreement to arbitrate and finds that whether Defendant's pre-litigation conduct constituted waiver is for the arbitrator to decide, see *supra*, the Court did not consider—and did not need to consider—the evidence Plaintiff moved to strike.  Therefore, this Motion is denied as moot.  *See DeCarlo v. Lincoln Life Assurance Co. of Boston*, No. 21-CV-2627, 2024 WL 3977688, at *12 (S.D.N.Y. Aug. 29, 2024) ("Because the Court did not consider [the] evidence [Plaintiff] moves to strike, [Plaintiff's] motion should be denied as moot.") (report and recommendation).

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Compel Arbitration and Stay and Plaintiff's Motion to Seal.  The Court denies Plaintiff's Motion to Strike as moot. This matter is accordingly stayed pending the completion of arbitration.  The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 27, 39, 42).

SO ORDERED.

DATED:      March 26, 2026
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

12